1 | MICHAEL N. FEUER, City Attorney
KATHLEEN A. KENEALY, Chief Assistant City Attorney (SBN 212289)
2 | SCOTT MARCUS, Senior Assistant City Attorney (SBN 184980)
GABRIEL S. DERMER, Assistant City Attorney (SBN 229424)
3 | JEFFREY L. GOSS, Deputy City Attorney (SBN 178597)
JESSICA MARIANI, Deputy City Attorney (SBN 280748)
4 | 200 North Main Street, City Hall East, 6th Floor
Los Angeles, California  90012
5 | Telephone:  213-978-7564/213-978-6952
Facsimile:   213-978-7011
6 | Email:      jeffrey.goss@lacity.org
Email:      jessica.mariani@lacity.org
7

8 | Attorneys for Defendant CITY OF LOS ANGELES

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| JOSEPH MORRISSEY, | No. 2:20-cv-03355-JFW (MAAx) |
| Plaintiff, | Hon. John F. Walter |
| v. | **CITY OF LOS ANGELES' NOTICE OF MOTION AND MOTION TO DISMISS OR STAY ACTION PURSUANT TO *COLORADO RIVER* DOCTRINE; AND, IN THE ALTERNATIVE, TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. PROC. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES** |
| CITY OF LOS ANGELES; and TOWWERKS, LLC (d/b/a/ VIERTEL'S CENTRAL DIVISION, VIERTEL'S  NORTHEAST DIVISION), | |
| Defendants. | |
| | **[Request for Judicial Notice; and [Proposed] Order Filed Concurrently Herewith]** |
| | **Hearing** |
| | Date:  August 10, 2020 |
| | Time: 1:30 p.m. |
| | Location: Courtroom 7A |
| |                  350 W. 1st Street |
| |                  Los Angeles, CA 90012 |
| | Complaint filed:  April 9, 2020 |
| | SAC Filed:  June 22, 2020 |

CITY OF LOS ANGELES' MOTION FOR DISMISSAL OR STAY

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Monday, August 10, 2020 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 7A of the above titled Court, located at 350 West 1st Street, Los Angeles, California, 90012, Defendant City of Los Angeles ("City") will and hereby does move to dismiss or stay this action filed by Plaintiff Joseph Morrissey pursuant to the *Colorado River* doctrine, or, in the alternative, to dismiss Plaintiff's Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).  The City's Motion is brought on the grounds that the action should be dismissed or stayed pending the outcome of Plaintiff's parallel state court action under *Colorado River*; and alternatively, pursuant to Federal Rule of Civil Procedure 12(b)(6), each of the claims purportedly asserted in the SAC against the City should be dismissed because the SAC fails to state any such claim.

The City's Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice, upon all the pleadings and papers that are on file in this action, and upon all oral and documentary evidence that may be presented at the time of the hearing on this Motion. This Motion is made following two conferences of counsel pursuant to Local Rule 7-3. The first conference took place on May 29, 2020 regarding the First Amended Complaint (Dkt. No. 32), which resulted in Plaintiff filing the operative SAC.  The second conference took place on June 30, 2020 after Plaintiff filed his SAC.  *See* Dkt. No. 39.

Dated:   July 13, 2020

MICHAEL N. FEUER, City Attorney
KATHLEEN A. KENEALY, Chief Assistant City Attorney
SCOTT MARCUS, Senior Assistant City Attorney
GABRIEL S. DERMER, Assistant City Attorney
JEFFREY L. GOSS, Deputy City Attorney

/s/ Jessica Mariani
JESSICA A. MARIANI
Deputy City Attorney
Attorneys for Defendant City of Los Angeles

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................... 1

II. STATEMENT OF RELEVANT FACTS .................................................. 2

    A. The City's 72-Hour Parking Law ................................................. 2

    B. Plaintiff Violated The 72-Hour Parking Law ............................... 2

    C. Plaintiff Did Not Take The Necessary Steps To Recover His Car .............. 2

    D. Plaintiff Files Two Almost Identical Lawsuits .............................. 4

III. LEGAL STANDARDS ............................................................................ 5

    A. Motion to Dismiss or Stay Under *Colorado River* Doctrine ...................... 5

    B. Motion to Dismiss Pursuant to Rule 12(b)(6) ............................... 6

IV. THIS ACTION SHOULD BE DISMISSED OR STAYED UNDER THE *COLORADO RIVER* DOCTRINE ................................................................ 6

    A. The Two Cases Filed By Plaintiff Are Substantially Similar ..................... 6

    B. Dismissal Or A Stay Of This Action Will Avoid Piecemeal Litigation ....... 8

    C. State Law Provides The Rule Of Decision For Most Claims ..................... 9

    D. The State Court Proceeding Adequately Protects Plaintiff's Rights .......... 10

    E. Dismissing Or Staying This Action Discourages Forum Shopping ........... 11

    F. State Court Proceedings Can Resolve All Issues Before Federal Court ..... 11

V. ALTERNATIVELY, THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM AGAINST THE CITY ................. 12

    A. Plaintiff Has Not Alleged *Monell* Liability For Violation of His Fourth or Fourteenth Amendment Rights ................................................... 12

        1. Plaintiff's First Claim Fails Because Tows To Enforce The 72-Hour Law Do Not Violate Constitutional Rights ................... 13

        2. Plaintiff's Second Claim Fails Because Plaintiff Cannot Establish *Monell* Liability Based On The Fourteenth Amendment ........................................................................... 16

            a. Lack of Facts Establishing A Policy, Practice, or Custom ..... 16

            b. No Identified Policy, Practice or Custom Was The "Moving Force" Behind A Constitutional Violation ............. 18

    B. Plaintiff Has Not Adequately Alleged A Failure to Train or Supervise ..... 19

i

C.    Plaintiff Fails To State A Claim For Violation Of The ADA ..................... 20

D.    Plaintiff Fails To State A Claim Under The Unruh Civil Rights Act ......... 22

E.    Plaintiff Fails To State A Claim Under The CDPA ................................... 23

F.    Plaintiff Cannot State A Claim Against The City Under California Civil Code Section 3072 ........................................................................... 24

G.    Plaintiff Fails To State A Claim Under Government Code Section 815.6 ......................................................................................................... 24

VI.   CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abcarian v. Levine,*
    2016 U.S. Dist. LEXIS 192140 (C.D. Cal. Nov. 28, 2016) .............................. 7, 10, 12

*Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.,*
    843 F.2d 1253 (9th Cir. 1988) ........................................................................... 6

*Apostol v. Castro Valley Unified Sch. Dist,*
    2011 U.S. Dist. LEXIS 124509 (N.D. Cal. Oct. 27, 2011) ........................................ 21

*Bauer v. City of Pleasanton,*
    2020 U.S. Dist. LEXIS 52748 (N.D. Cal., Mar. 26, 2020) .............................. 16

*Bd. Of the Cnty. Comm'rs v. Brown,*
    520 U.S. 397 (1997) ............................................................................................ 18

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 554 (2007) ........................................................................................ 6, 13

*Black v. Dep't of Mental Health,*
    83 Cal. App. 4th 739 (2000) ......................................................................... 10, 11

*Brown v. Texas,*
    443 U.S. 47 (1979) ............................................................................................. 14

*Capp v. City of San Diego,*
    940 F.3d 1046 (9th Cir. 2019) ........................................................................... 13

*Carter v. City of Los Angeles,*
    224 Cal.App.4th 808 (2014) ......................................................................... 23, 24

*Cholla Ready Mix, Inc. v. Civish,*
    382 F.3d 969 (9th Cir. 2004) .............................................................................. 6

*Connick v. Thompson,*
    563 U.S. 51 (2011) ............................................................................................. 19

*In re Countrywide Fin. Corp. Deriv. Litig.,*
    542 F. Supp. 2d 1160 (C.D. Cal. 2008) ............................................................... 7

*Courthouse News Serv. v. Planet*,
750 F.3d 776 (9th Cir. 2014) ........................................................................ 5

*Curran v. Mount Diablo Council of the Boy Scouts*,
17 Cal.4th 670 (1998) ................................................................................. 22

*Dougherty v. City of Covina*,
654 F.3d 892 (9th Cir. 2011) ............................................... 12, 13, 18, 20

*Duvall v. Cty. of Kitsap*,
260 F.3d 1124 (9th Cir. 2001) ................................................................... 22

*Fireman's Fund Ins. Co. v. Garamendi*,
790 F. Supp. 938 (N.D. Cal. 1992) ............................................................ 11

*Flores v. County of Los Angeles*,
758 F.3d 1154 (9th Cir. 2014) ........................................................... 19, 20

*Gallagher v. Dillon Group, 2003-I*,
2010 U.S. Dist. LEXIS 33054 (N.D. Cal. 2010) ...................................... 10

*Gaston v. Colio*
883 F. Supp. 508 (S.D. Cal. 1995) ............................................................ 22

*Guzman v. County of Monterey*,
46 Cal. 4th 887 (2009) ............................................................................... 24

*Hallstrom v. City of Garden City*,
991 F.2d 1473 (9th Cir. 1993) ........................................................... 14, 15

*Hawkins v. San Mateo County Law Library*,
2007 U.S. Dist. LEXIS 47559 (N.D. Cal. Jun. 21, 2007) ........................ 24

*AE ex rel. Hernandez v. County*,
666 F.3d 631 (9th Cir. 2012) ..................................................................... 13

*Inman v. Anderson*,
294 F. Supp. 3d 907 (N.D. Cal. 2018) ...................................................... 18

*LA MF Holdings SPE, LLC v. Shekhter*,
2017 U.S. Dist. LEXIS 220299 (C.D. Cal., Jun. 8, 2017) ................*passim*

*Manda v. Albin*,
2019 U.S. Dist. LEXIS 204473 (N.D. Cal. Nov. 25, 2019) ............... 19, 20

iv

*Mandujano v. Geithner*,
   2011 U.S. Dist. LEXIS 68582 (N.D. Cal. Jun. 28, 2011) ...........................................21

*Martinez v. County of Los Angeles*,
   2018 U.S. Dist. LEXIS 21875 (C.D. Cal., Feb. 1, 2018) ...........................................16

*Miranda v. City of Cornelius*,
   429 F.3d 858 (9th Cir. 2005) ...........................................15

*Monell v. Dep't of Soc. Servs. of the City of New York*,
   436 U.S. 658 (1978)...........................................*passim*

*Montanore Minerals Corp. v. Bakie*,
   867 F.3d 1160 (9th Cir. 2017) ...........................................5, 8, 9

*Moss v. United States Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) ...........................................6

*Nakash v. Marciano*,
   882 F.2d 1411 (9th Cir. 1989) ...........................................6, 7, 8, 10

*O'Guinn v. Lovelock Corr. Ctr.*,
   502 F.3d 1056 (9th Cir. 2007) ...........................................20, 22

*Ollie v. Riggin*,
   848 F.2d 1016 (9th Cir. 1988) ...........................................10

*Qualified Patients Assn. v. City of Anaheim*,
   187 Cal.App.4th 734 (2010) ...........................................22, 23

*R.R. St. & Co. v. Transp. Ins. Co.*,
   656 F.3d 966 (9th Cir. 2011) ...........................................*passim*

*Ramirez v. City of Buena Park*,
   560 F.3d 1012 (9th Cir. 2009) ...........................................15

*Ross v. U.S. Bank Nat'l Ass'n*,
   542 F. Supp. 2d 1014 (N.D. Cal. 2008)...........................................11

*Sackman v. City of Los Angeles*,
   677 Fed. Appx. 365 (9th Cir. 2017)...........................................15

*Sanchez v. City of Fresno*,
   914 F. Supp. 2d 1079 (E.D. Cal. 2012) ...........................................17

v

*Sanders v. Arneson Prods., Inc.*,
91 F.3d 1351 (9th Cir. 1996) .................................................................. 21

*Scofield v. Hillsborough*,
862 F.2d 759 (9th Cir. 1988) .................................................................. 17

*Soldal v. Cook County*,
506 U.S. 56 (1992)................................................................................... 14

*South Dakota v. Opperman*,
428 U.S. 364 (1976)................................................................................. 14

*Stamps v. Superior Court*,
136 Cal. App. 4th 1441 (2006) ............................................................... 22

*Sulima v. Tobyhanna Army Depot*,
602 F.3d 177 (3d Cir. 2010) ................................................................... 21

*Taormina v. California Dept. of Corrections*,
946 F. Supp. 829 (S.D. Cal. 1996)................................................... 22, 23

*Taylor v. County of San Bernardino*,
2011 U.S. Dist. LEXIS 113051 (C.D. Cal., Apr. 12, 2011) ..................... 13

*United States v. Hawkins*,
249 F.3d 867 (9th Cir. 2001) .................................................................. 14

*United States v. Jensen*,
425 F.3d 698 (9th Cir. 2005) .................................................................. 14

*Van Dusen v. City of Oakland*,
2015 U.S. Dist. LEXIS 51777 (N.D. Cal., Apr. 20, 2015).......................16

*Vasquez v. City of Santa Paula*,
2015 U.S. Dist. LEXIS 186844 (C.D. Cal. Mar. 11, 2015).......................20

*Warfield v. Peninsula Golf & Country Club*,
10 Cal.4th 594 (1995) ............................................................................. 23

*Waters v. Hollywood Tow Serv.*,
2010 U.S. Dist. LEXIS 93091 (C.D. Cal., Jul. 27, 2010)................... 15, 17

*Whitsitt v. Zedlitz*,
2013 U.S. Dist. LEXIS 202482 (Jul. 19, 2013)........................................ 18

CITY OF LOS ANGELES' MOTION FOR DISMISSAL OR STAY

*WMX Techs. v. Miller*,
  80 F.3d 1315 (9th Cir. 1996) ........................................................................ 12


**Statutes**

42 U.S.C. § 1983 ......................................................................... 10, 12, 16, 19

42 U.S.C. § 12102(1) ................................................................................... 20

42 U.S.C. § 12132 ....................................................................................... 20

California Vehicle Code § 40215 .................................................................. 2

California Vehicle Code § 40230 .................................................................. 2

California Vehicle Code § 22651(k) .......................................................... 2, 9

California Vehicle Code § 22852 .......................................................... *passim*

California Civil Code § 54 ............................................................................. 7

California Civil Code § 54.3(a) ................................................................... 24

California Civil Code § 3072 ............................................................... *passim*

California Civil Procedure Code § 526a ....................................................... 8

California Government Code § 815.6 ..................................................... 10, 24

Los Angeles Municipal Code § 80.73.2 ("72-Hour Law") ................... *passim*

**Other Authorities**

United States Constitution Amendment IV ............................................ 13, 14

United States Constitution Amendment XIV ....................................... *passim*

Federal Rule of Civil Procedure 12(b)(6) ......................................... 5, 6, 25

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

After violating a local ordinance by leaving his car in the same spot on a public street for over 72 hours, Plaintiff Joseph Morrissey's ("Plaintiff") car was cited on February 22, 2019, towed on February 28, 2019, and ultimately sold at a lien sale on April 11, 2019.  After Plaintiff allegedly did not receive a hearing to contest his citation and impound, Plaintiff did not take any steps to stop the lien sale of his car, and instead chose to file this federal lawsuit challenging the validity of the City's ordinance prohibiting motorists from parking a car in the same spot on any public road or alley for 72 or more consecutive hours ("72-Hour Law"), and the City's procedures to enforce that law.  On the very same day that Plaintiff filed this lawsuit, he filed another lawsuit against the City in California Superior Court arising out of the same facts and asserting the same legal theories, *i.e.,* that the City's enforcement of its 72-Hour Law violated the Fourth and Fourteenth Amendments to the United States Constitution, the Americans with Disabilities Act, and a number of California statutes, including the Unruh Civil Rights Act, the Disabled Persons Act, California Civil Code section 3072, and California Vehicle Code section 22852.  Plaintiff's gamesmanship in simultaneously pursuing the same challenge in two forums should not be permitted as it would encourage forum shopping, cause unnecessary duplication of efforts, and pose a real danger of piecemeal and conflicting decisions that could have widespread ramifications throughout the State of California since many cities have laws similar to Los Angeles' 72-Hour Law.  In the interests of wise administration of justice, this case should be dismissed or stayed pending the outcome of the parallel State Action under the *Colorado River* doctrine.

Alternatively, each claim asserted against the City in the SAC should be dismissed for failure to state a claim.  The deficiencies of the claims highlight that Plaintiff's attempt to invalidate the 72-Hour Law is nothing more than an effort to achieve through a court what advocates failed to achieve through the appropriate legislative channel via a failed Assembly Bill in 2019 that sought to ban tows for violations of the 72-hour rule.

## II.   STATEMENT OF RELEVANT FACTS

### A.   The City's 72-Hour Parking Law

The City of Los Angeles ("City"), like many cities throughout the state, has a long-standing law that makes it "unlawful for any person who owns or who has possession, custody or control of any vehicle to park that vehicle or leave it standing upon any highway, street or alley for 72 or more consecutive hours." *See* Request for Judicial Notice, Ex. B (Los Angeles Municipal Code ("LAMC") § 80.73.2).  The prohibition on leaving a parked car in the same spot for 72 hours consecutive hours prevents cars from hogging the finite resource of available parking, and prevents streets from becoming littered with abandoned cars that attract criminal activity, such as theft and vandalism. *See* RJN, Ex. C.  The California Vehicle Code authorizes a city to tow any car parked in violation of such a city ordinance.  Cal. Veh. Code § 22651(k).

### B.   Plaintiff Violated The 72-Hour Parking Law

Plaintiff does not dispute that he violated the 72-Hour Law by leaving his car parked on the street outside his home for at least 10 days.  SAC ¶¶ 1, 18, 21.  Plaintiff learned that his car had been cited on February 22, 2019 for violating the 72-Hour Law when he returned home on February 25, 2019 after a week-long hospital stay. SAC ¶¶ 18-21.  Despite the clear warning on the citation that his car "will be towed if not moved," the car remained on the street for nearly three additional days until it was towed by Defendant Towwerks, LLC d/b/a Viertel's Central Division ("Viertel's") on February 28, 2019.  SAC ¶¶ 2, 21.  Plaintiff alleges he could not find anyone to move his car, and that he was "largely bedbound in the days following his discharge from hospital" and not allowed to drive for three months due to side effects of medicine. SAC ¶¶ 20, 21.

### C.   Plaintiff Did Not Take The Necessary Steps To Recover His Car

Plaintiff acknowledges that there are separate and distinct processes by which a vehicle owner may (1) challenge a citation, (2) contest the basis for an impound, and (3) stop a lien sale – all of which are governed by separate laws. *See* SAC ¶ 27; *see* Cal. Veh. Code §§ 40215, 40230 (governing challenges to parking citations); Cal. Veh. Code

2

§ 22852 (governing challenges to vehicle impounds); Cal. Civ. Code § 3072 (governing lien sales).  Without alleging that he took all steps necessary to challenge the citation, tow, and lien sale, Plaintiff nonetheless contends the City should have rescinded the citation and impound because he was hospitalized when the citation was issued.  SAC ¶ 95.  Although Plaintiff discovered the citation on February 25, 2019 (SAC ¶¶ 20-21), it was not until his car was towed on February 28, 2019 that he allegedly filed a constituent dispute form. SAC ¶ 22.  Ignoring that a car owner must take different steps to challenge a citation and an impound, Plaintiff alleges vaguely – without setting forth the contents of the dispute form – that the form "challeng[ed] the citation and tow" on the grounds that Plaintiff was in hospital when the citation was issued.  *Id.*  In response, the City's Parking Violations Bureau sent Plaintiff two letters on March 4, 2019, acknowledging Plaintiff's dispute of the citation, and informing him that "[c]itations cannot be dismissed without any substantiating document to support [his] medical-related claim." SAC ¶ 23.

Two days later, on March 6, 2019, the City issued an impound notice ("Impound Notice") to Plaintiff notifying him in writing that his car had been impounded.  SAC ¶ 24.  Plaintiff concedes not only that he received the Impound Notice, but also that it contained instructions spelling out what he needed to do to contest the impound.  *Id.* Consistent with Vehicle Code section 22852, the instructions specified that in order to contest the impound of his car – as opposed to the citation – Plaintiff needed to contact "DOT Central" within ten days to request a post-impound hearing.  *Id.*

Also on March 6, 2019, Viertel's issued a notice of pending lien sale ("Lien Sale Notice"), as required by Civil Code section 3072, again notifying Plaintiff that his car would be sold unless he took steps to prevent that sale.  SAC ¶ 25.  Plaintiff concedes that he received the Lien Sale Notice, but quibbles with the notice's alleged omission of "facts concerning the claim which gives rise to the lien, including by leaving blank the amount owed due to a citation" (SAC ¶ 26), even though Plaintiff knew the amount owed due to the citation was $68, as listed on the citation.  *See* SAC ¶ 29.

Despite these two notices, Plaintiff did *not* follow the instructions in the Impound

Notice to contact "DOT Central" within 10 days to request a post-impound hearing. *See* SAC ¶ 24. Plaintiff instead chose to write to DOT's Parking Violations Bureau on March 15, 2019 in response to the earlier March 4, 2019 letter regarding DOT's initial review of the citation, which informed Plaintiff that "[c]itations cannot be dismissed without any substantiating document to support [his] medical-related claim." SAC ¶¶ 23, 28. Likewise, Plaintiff did not pursue either of the two options available to him to recover his car prior to the lien sale: pay the fees (which he alleges he could not afford) (SAC ¶ 27), or dispute the lien sale in court. *See* Cal. Civ. Code § 3072. Indeed, the SAC does not allege Plaintiff took *any* actions to recover his car from Viertel's at any time. Plaintiff instead "chose to continue to pursue his right to dispute the citation and the tow" while forgoing any effort to stop the lien sale. *See* SAC ¶ 27.

Plaintiff complains that the Impound Notice was issued after the 48-hour deadline set by Vehicle Code section 22852. SAC ¶ 136. Even if the notice were late, Plaintiff does not, and cannot, contend that it caused him to be unable to timely contest the impound since that deadline is triggered by the notice date. *See* Cal. Veh. Code § 22852(b)(4) (owner must request poststorage hearing within 10 days of date on notice). Likewise, although Plaintiff claims that he was not given extra time to contest the citation, impound, or lien sale (SAC ¶ 27), Plaintiff does not allege that he needed or ever requested additional time. Instead, Plaintiff claims that he timely submitted a Request for Hearing on the citation and payment for the citation, which was "cashed" by the City on March 29, 2019. SAC ¶ 30. Plaintiff does not allege that he followed up regarding scheduling of a hearing after the City allegedly "cashed" his citation payment. Viertel's ultimately sold Plaintiff's car at a lien sale on April 11, 2019. SAC ¶ 32.

### D.   **Plaintiff Files Two Almost Identical Lawsuits**

Plaintiff filed two lawsuits against the City[1] on April 9, 2020: the instant lawsuit in federal court ("Federal Action"), and one in California superior court ("State Action"). As noted in Plaintiff's notice pursuant to Local Rule 83-1.4.1, the State Action "involves

---

[1] While the City is the sole defendant in the State Action, Plaintiff added an alleged agent of the City as a co-defendant in the Federal Action.

1    all or a material part of the subject matter [of] this action; namely, the same underlying

2    factual events that occurred when the City of Los Angeles and its agents unlawfully

3    seized and sold Mr. Morrissey's car without due process of law and without any

4    consideration for his disability, while he was still in recovery from cancer surgery."  Dkt.

5    4 at 1:19-24.  Both suits arise out of the City's enforcement of its 72-Hour Law in

6    issuing a parking citation to Plaintiff's car on February 22, 2019, and its subsequent

7    impound and lien sale.  Both suits claim that the City's enforcement of its 72-Hour Law

8    violated the same California statutes (the Unruh Civil Rights Act, the Disabled Persons

9    Act, California Civil Code section 3072, and California Vehicle Code section 22852),

10   the Fourth and Fourteenth Amendments to the United States Constitution, and the

11   Americans with Disabilities Act.  In both actions, Plaintiff seeks declaratory relief and

12   injunctive relief enjoining[2] the City from enforcing the 72-Hour Law.

13   **III.   LEGAL STANDARDS**

14        **A.   Motion to Dismiss or Stay Under *Colorado River* Doctrine**

15        Under the *Colorado River* doctrine, a federal district court may abstain from

16   exercising jurisdiction[3] in favor of parallel state proceedings where doing so would serve

17   the interests of 'wise judicial administration, giving regard to the conservation of judicial

18   resources and comprehensive disposition of litigation.'"  *See Montanore Minerals Corp.*

19   *v. Bakie*, 867 F.3d 1160, 1165 (9th Cir. 2017).  In deciding whether to apply the doctrine,

20   courts engage in a pragmatic balancing of eight factors, with an eye to the realities of the

21   case.  *See R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 978-79 (9th Cir. 2011).  The

22   factors are: (1) which court first assumed jurisdiction over property at stake; (2)

23   inconvenience of the federal forum; (3) desirability of avoiding piecemeal litigation; (4)

24   the order in which jurisdiction was obtained by the forums; (5) whether federal law or

---

25   [2] Although Plaintiff removed "injunctive" from the complaint title when he amended, the Prayer of the SAC still seeks preliminary and permanent injunctive relief.  Prayer § .ix.

26   [3] While the Ninth Circuit "ha[s] not squarely held whether abstention is properly raised under Rule 12(b)(6), Rule 12(b)(1), both, or neither" (*see Courthouse News Serv. v.*

27   *Planet*, 750 F.3d 776, 780 n.2 (9th Cir. 2014)), many courts treat *Colorado River* abstention as distinct from a Rule 12(b)(1) motion.  *See e.g., Shekhter*, 2017 U.S. Dist.

28   LEXIS 220299, at *46 (denying 12(b)(6) motion and *sua sponte* staying case under *Colorado River*).

state law provides the rule of decision on the merits; (6) whether the state proceedings are inadequate to protect the federal litigant's rights; (7) desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court. *See P6 LA MF Holdings SPE, LLC v. Shekhter*, 2017 U.S. Dist. LEXIS 220299, at *41 (C.D. Cal., Jun. 8, 2017) (citation omitted).  Rather than a mechanical checklist, these factors should serve as a guide for flexible balancing, with the weight given to each factor potentially varying greatly from case to case.  *See Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1257 (9th Cir. 1988).

### B.    Motion to Dismiss Pursuant to Rule 12(b)(6)

A complaint may be dismissed for failure to state a claim under Rule 12(b)(6) where the factual allegations do not raise the right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007); *see also Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) ("for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). While the court assumes that well-pleaded factual allegations are true, the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004) (citation omitted).

## IV.    THIS ACTION SHOULD BE DISMISSED OR STAYED UNDER THE *COLORADO RIVER* DOCTRINE

The "exceptional circumstances" necessary to warrant a dismissal or stay of this action pending the outcome of Plaintiff's State Action under the *Colorado River* doctrine exist here.  *See Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989).

### A.    <u>The Two Cases Filed By Plaintiff Are Substantially Similar</u>

Sometimes treated as a threshold inquiry, courts deciding whether to abstain from exercising jurisdiction under the *Colorado River* doctrine must determine whether the federal and state actions are sufficiently parallel, *i.e.*, whether 'substantially the same

1  parties are contemporaneously litigating the same issues in different forums.'" *See In re*

2  *Countrywide Fin. Corp. Deriv. Litig.*, 542 F. Supp. 2d 1160, 1170 (C.D. Cal. 2008)

3  ("[a]s a threshold matter to the *Colorado River* test, the Court must determine whether

4  the federal and state actions are sufficiently 'parallel'"); *see also Shekhter*, 2017 U.S.

5  Dist. LEXIS 220299, at *39 (treating as "a threshold matter" the determination whether

6  actions are sufficiently parallel).  To satisfy this inquiry, "exact parallelism" is not

7  required; rather, it is enough that the two actions are "substantially similar." *Nakash*,

8  882 F.2d at 1417 (holding abstention was not an abuse of discretion, even where "exact

9  parallelism [did] not exist," because the disputes in both forums concerned same issue);

10  *Abcarian v. Levine*, 2016 U.S. Dist. LEXIS 192140, at *10 (C.D. Cal. Nov. 28, 2016)

11  (concluding actions were "substantially similar" because "they center[ed] on common

12  facts and legal questions," even where actions involved different defendants and named

13  plaintiffs), *aff'd*, 693 Fed. Appx. 487 (9th Cir. 2017).  A court "should be particularly

14  reluctant to find that the actions are not parallel when the federal action is but a 'spin-

15  off' of more comprehensive state litigation." *Shekhter*, 2017 U.S. Dist. LEXIS 220299,

16  at *39-40 (citing *Nakash*, 882 F.2d at 1417).

17      Here, Plaintiff filed two lawsuits against the City[4] on the same day arising from

18  the citation, impound, and subsequent lien sale of his car in 2019.  Not only is the

19  gravamen of both cases the same, but a substantial number of the allegations in the

20  complaints are word-for-word identical.[5]  In both cases, Plaintiff challenges the City's

21  72-Hour Law enforcement on the same grounds, *i.e.*, that it violates a slew of California

22  statutes, including the Unruh Civil Rights Act (California Civil Code section 51), the

23  Disabled Persons Act (California Civil Code section 54), California Civil Code section

24  3072, and California Vehicle Code section 22852, in addition to the Fourth and

---

25  [4] Plaintiff's choice to add a defendant here that is not named in the State Action does not
26  preclude finding the actions are sufficiently parallel, particularly when Viertel's is sued
    as an alleged agent of the City, and could be sued in the State Action. *See Shekhter*,
    *supra*, at *40 ("although the two cases do not involve identical parties, they both involve
27  the same core actors, their employees, and entities under their control).
    [5] *See, e.g.*, SAC ¶ 4 ("The City and its agents tow vehicles for violations of the 72-hour
28  rule without a warrant or [] reasonable justification, such as a public safety rationale.");
    *see also* RJN, Ex. A (State Complaint) at ¶ 8 (same).

Fourteenth Amendments to the United States Constitution, and the Americans with Disabilities Act ("ADA").  In both cases, Plaintiff seeks declaratory relief, and injunctive relief enjoining the City's enforcement of the 72-Hour Law, including warrantless towing of vehicles for violating the 72-Hour Law.  *See* SAC, Prayer at ¶¶ viii, ix; RJN, Ex. A (State Complaint) at Prayer ¶¶ 2, 3.  Indeed, Plaintiff acknowledges that both actions involve "the same underlying factual events that occurred when the City of Los Angeles and its agents unlawfully seized and sold Mr. Morrissey's car without due process of law and without any consideration for his disability, while he was still in recovery from cancer surgery."  *See* Dkt. 4.  It is clear the same parties are litigating the same core issue– the validity of the City's enforcement of its 72-Hour Law–in two forums at the same time.  It is indisputable that the suits are "substantially similar."  *See Nakash*, 882 F.2d at 1416 (federal and state actions were substantially similar, even though the claims raised in each were different).  Indeed, this Federal Action is "but a spin-off" of the more comprehensive State Action in which Plaintiff asserts a taxpayer claim under California Civil Procedure Code section 526a on the basis of which he seeks broad injunctive and declaratory relief not just with respect to his personal rights, but on a citywide basis.  *See* Dkt. 4 ("The federal action…seeks damages for Mr. Morrissey, ***while the state action seeks broader relief available under state law***, traditionally provided by state courts.") (emphasis added); *see also Shekhter*, 2017 U.S. Dist. LEXIS 220299, at *39-40.  This factor weighs heavily in favor of abstention.

### B.    Dismissal Or A Stay Of This Action Will Avoid Piecemeal Litigation

The interest in avoiding piecemeal litigation substantially favors dismissal or a stay here.  "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Montanore Minerals Corp. v. Bakie*, 867 F. 3d 1160, 1167 (9th Cir. 2017) (holding district court abused discretion when it declined to stay case under *Colorado River*).  While a mere possibility of piecemeal litigation alone may not warrant a stay or dismissal of a federal action, a stay or dismissal is appropriate where there is a "special concern about piecemeal

litigation, which can be remedied by staying or dismissing the federal proceeding." *R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d at 979 (district court did not err in concluding that avoidance of piecemeal litigation weighed against exercise of federal jurisdiction).

The concern regarding piecemeal litigation is acute where, as here, a plaintiff pursues two actions simultaneously in state and federal court to achieve a singular goal. *See Montanore Minerals Corp. v. Bakie*, 867 F.3d at 1167 (concluding plaintiff's choice to file in two courts resulted in piecemeal litigation of plaintiff's singular goal, even where the state and federal courts did not consider precisely the same issue).  Plaintiff is simultaneously, in two courts, pursuing his singular goal of challenging the City's 72-Hour Law and related enforcement policies.  Since numerous identical factual and legal questions will need to be answered in both the State and Federal Actions, Plaintiff's choice to simultaneously pursue both cases will cause needless duplication of efforts and increase the danger that the two courts will reach conflicting conclusions as to the validity of the same law and procedures, undermining the "conservation of judicial resources and comprehensive disposition of the litigation."  *See Colorado River*, 424 U.S. at 817.  Moreover, impounds pursuant to the 72-Hour Law are authorized by state law (Cal. Veh. Code § 22651(k)), and many cities in California have similar 72-hour parking prohibitions and enforcement procedures.  Thus, similar to the "special concern" posed by piecemeal adjudication of water rights in *Colorado River*, concurrent analysis by this Court and the state court regarding whether the 72-Hour Law is valid poses a risk of conflicting results on an issue that could have statewide consequences.  *See Shekhter*, 2017 U.S. Dist. LEXIS 220299, at *42.  The substantial duplication of efforts between the State and Federal courts, coupled with the threat of conflicting decisions as to the validity of the 72-Hour Law constitute the type of "special concern" regarding piecemeal litigation that can be appropriately avoided if the Federal Action is dismissed or stayed. *R.R. St. & Co.*, at 979-80.  This factor, therefore, weighs in favor of dismissal or a stay.

### C.     State Law Provides The Rule Of Decision For Most Claims

The *Colorado River* analysis considers whether federal or state law provides the

1  rule of decision on the merits for the claims in the federal case.  *See Nakash*, 882 F.2d at

2  1416.  Here, five out of the eight claims asserted in the Federal Action are state law

3  claims arising under, and governed by, California law.[6]  Those claims all test whether

4  enforcement of the 72-Hour Law violated California statutes, such as the Unruh Act,

5  California Disabled Persons Act ("CDPA"), Civil Code section 3072, and Government

6  Code section 815.6.  While Plaintiff asserts three federal claims under 42 U.S.C. § 1983

7  and the ADA, the state court has concurrent jurisdiction over those.  *See Ollie v. Riggin*,

8  848 F.2d 1016, 1017 (9th Cir. 1988) (noting existence of "concurrent jurisdiction in state

9  and federal courts for civil rights cases" under 42 U.S.C. § 1983); *Black v. Dep't of

10  Mental Health*, 83 Cal. App. 4th 739, 744 n.4 (2000) ( "state courts have concurrent

11  jurisdiction of ADA claims").  Where, as here, the state and federal courts have

12  concurrent jurisdiction over asserted federal claims, the significance of their existence is

13  minimized, if not eliminated. *See Gallagher v. Dillon Group, 2003-I*, 2010 U.S. Dist.

14  LEXIS 33054, at *12 (N.D. Cal. 2010) ("The significance of the federal claims is even

15  more attenuated–and possibly eliminated–where the state court has concurrent

16  jurisdiction over such federal claims.").  On balance, this factor favors abstention.  *See

17  id.; see also Abcarian*, 2016 U.S. Dist. LEXIS 192140, at *15.

18       **D.**  **The State Court Proceeding Adequately Protects Plaintiff's Rights**

19       Although courts may not stay or dismiss a federal action if the state action cannot

20  adequately protect the rights of the federal litigant, this case does not present that issue.

21  *See R.R. Street & Co. Inc.*, 656 F.3d at 981 (finding state court could adequately address

22  rights and remedies at issue).  As stated above, the state court has jurisdiction over all

23  claims Plaintiff asserts here, and it cannot be said that the state court is unable to enter

24  orders to protect Plaintiff's rights – a fact Plaintiff well knows since every claim he

25  asserts in this Federal Action based on the federal Constitution or a federal statute is also

26  cited as a basis for his writ cause of action in the State Action.  *See Ollie*, 848 F.2d at

27  ─────────────────────
[6] The fourth claim for violation of the Unruh Act, the fifth claim for violation of the
28  CDPA, the sixth claim for violation of Civil Code section 3072, the seventh claim for
conversion (which is not asserted against the City), and the eighth claim for failure to
perform a duty under Government Code section 815.6 all arise under state law.

1   1017; *Black*, 83 Cal. App. 4th at 744 n.4.  There are no exclusively federal claims

2   asserted here that could not have been brought as part of the State Action.  *See Shekhter*,

3   2017 U.S. Dist. LEXIS 220299, at *44 (factor assessing adequacy of the state court

4   proceeding weighed against federal jurisdiction where "there [were] no exclusively

5   federal claims that could not be brought as part of the [state action]."); *see also*

6   *Fireman's Fund Ins. Co. v. Garamendi*, 790 F. Supp. 938, 965-66 (N.D. Cal. 1992)

7   (dismissing federal case and noting that "[a]n aggrieved party can complain about

8   violations of federal law or the federal constitution…in state court…").  Consideration of

9   this factor supports abstention.

10       **E.    Dismissing Or Staying This Action Discourages Forum Shopping**

11      Forum shopping takes place when a litigant seeks to gain a strategic advantage

12  from filing in multiple forums.  *See R.R. St.*, 565 F.3d at 981 ("Forum shopping refers to

13  the practice of choosing the most favorable jurisdiction or court in which a claim might

14  be heard.").  Although Plaintiff will undoubtedly argue that it has not yet received any

15  unfavorable ruling or setback in the State Action, that is only because Plaintiff made the

16  decision to file the two almost identical lawsuits on the same day, undoubtedly to gain

17  the tactical advantages of pursuing two forums simultaneously and to maximize chances

18  of a favorable result.  Allowing these duplicative suits to proceed simultaneously would

19  encourage forum shopping, and would undermine the "wise judicial administration" that

20  the *Colorado River* doctrine seeks to promote.  *See Ross v. U.S. Bank Nat'l Ass'n*, 542 F.

21  Supp. 2d 1014, 1022-23 (N.D. Cal. 2008) (forum shopping factor supported abstention

22  where federal action was substantially similar to state actions brought by same counsel).

23       **F.    State Court Proceedings Can Resolve All Issues Before Federal Court**

24      As explained above, Plaintiff's State and Federal Actions are substantially similar,

25  and the factual issues and legal questions to be resolved in this action will all be

26  addressed and resolved by the State Action.  There is no reason why Plaintiff's rights

27  cannot be protected in the State Court action and the issues raised here cannot be

28  resolved there.  The mere fact that Plaintiff strategically chose to pursue damages only in

his Federal Action, but not in his State Action, is not sufficient to warrant allowing him to pursue both at the same time, particularly when nothing stopped him from bringing the claims on which he seeks damages in the State Action. *See Abcarian*, 2016 U.S. Dist. LEXIS, at \*9, 18 (granting *Colorado River* stay, despite fact that Plaintiffs sought no damages in state action but did seek damages in federal action).

Weighing all applicable[7] *Colorado River* factors in the pragmatic way urged by the Ninth Circuit supports dismissal or a stay of this action pending the outcome of Plaintiff's State Action. *See R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d at 978-79 (urging pragmatic balancing with eye to realities of the case) (citation omitted).

## V.   ALTERNATIVELY, THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM AGAINST THE CITY

### A.   Plaintiff Has Not Alleged *Monell* Liability For Violation of His Fourth or Fourteenth Amendment Rights

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendant, acting under color of law, deprived the plaintiff of a right secured by the Constitution or federal statutes. *See WMX Techs. v. Miller*, 80 F.3d 1315, 1318 (9th Cir. 1996) (affirming dismissal of section 1983 action). Since a city cannot be held vicariously liable for deprivation of constitutional rights by employees or agents, a plaintiff asserting such a claim against a city must also allege that a policy, practice, or custom of the city was a "moving force" behind the alleged deprivation of rights. *See Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978)). Thus, in order to state his first two claims against the City, Plaintiff must allege that: (1) he possesses a constitutional right of

---

[7] To the extent relevant in this situation where the state and federal actions were filed on the same day, the fourth factor addressing the order of jurisdiction tips in favor of abstention because the "Notice of Pendency of Other Actions or Proceedings" filed by Plaintiff in this case indicates that the State Action was filed first. Dkt. 4. The first two factors, addressing which forum first assumed jurisdiction over property at stake is irrelevant to the analysis here since the State and Federal Actions were filed on the same day, and Plaintiff is not seeking to recover property in either action. *See R.R. Street & Co. Inc.*, 656 F.3d at 979 (declining to analyze irrelevant factors). Similarly, the second factor addressing the inconvenience of the federal forum has no significance here since both the federal and state forums are in Los Angeles.

which he was deprived; (2) the City had a policy, custom, or practice; (3) the policy, custom, or practice amounts to deliberate indifference to Plaintiff's constitutional rights; and (4) the policy, custom, or practice was the moving force behind the constitutional violation. *Dougherty*, 654 F.3d 892 at 900.  Merely reciting these elements in a conclusory way, without factual support, is insufficient.  *See Taylor v. County of San Bernardino*, 2011 U.S. Dist. LEXIS 113051, at *13 (C.D. Cal., Apr. 12, 2011) ("after *Twombly* and *Iqbal*, conclusory allegations that merely recite the elements of a Monell claim are not enough; plaintiff must allege specific facts giving rise to a plausible Monell claim.").  Rather, a "plaintiff must allege specific facts giving rise to a plausible *Monell* claim." *Id.*; *see also AE ex rel. Hernandez v. County*, 666 F.3d 631, 637 (9th Cir. 2012) (for a *Monell* claim to survive a motion to dismiss, "factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.").

Here, Plaintiff fails to adequately state a claim against the City under *Monell* for violation of his Fourth or Fourteenth Amendment rights on any of the asserted bases.

### 1.   Plaintiff's First Claim Fails Because Tows To Enforce The 72-Hour Law Do Not Violate Constitutional Rights

Plaintiff's first claim should be dismissed because Plaintiff does not, and cannot, plausibly allege a deprivation of his Fourth or Fourteenth Amendment rights based on towing his car for violating the 72-Hour Law.  *See Capp v. City of San Diego*, 940 F.3d 1046, 1061 (9th Cir. 2019) (affirming dismissal of *Monell* claim where plaintiffs failed to plausibly plead a Fourth Amendment violation).

Plaintiff has not, and cannot, assert a facial or as-applied challenge to the City's 72-Hour Law or its enforcement of that law based on the identified policy of towing cars for violating the 72-Hour Law. *See* SAC ¶ 61.  As admitted by Plaintiff, the City first issued a citation warning Plaintiff his vehicle would be towed if not moved, and only impounded the vehicle after Plaintiff continued to violate the City's 72-hour law.  SAC

13

¶¶ 19-21.  Notwithstanding these admissions, Plaintiff alleges that because "Defendants" towed his vehicle without a warrant or reasonable justification, the tow amounts to an unreasonable seizure.  SAC ¶ 61.

The analysis is not nearly as simple as Plaintiff hopes or his allegations suggest. True, courts recognize that a seizure results where "some meaningful interference with an individual's possessory interests in that property."  *Soldal v. Cook County*, 506 U.S. 56, 61 (1992).  But the touchstone of the Fourth Amendment is reasonableness, and the Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001) (citing *Florida v. Jimeno*, 500 U.S. 248, 250 (1991)).

In *Brown v. Texas*, 443 U.S. 47 (1979), the Supreme Court held:

The reasonableness of seizures that are less intrusive than a traditional arrest depends 'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.' Consideration of the constitutionality of such seizures involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty. *Id.* at 50-51 (citations omitted).

Stated more simply, a seizure conducted without a warrant need only fit within an exception to be considered reasonable.  *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001).  Here, the community caretaking exception renders meritless Plaintiff's claim of a Fourth Amendment violation.

Under the community caretaking exception, the City is entitled to impound not only those vehicles that jeopardize public safety and the efficient movement of traffic, *South Dakota v. Opperman*, 428 U.S. 364, 371 (1976), but also those that may be a target of vandalism or theft.  *United States v. Jensen*, 425 F.3d 698, 706 (9th Cir. 2005); *see also Hallstrom v. City of Garden City*, 991 F.2d 1473, 1477 (9th Cir. 1993) (impoundment of arrestee's car from private parking lot "to protect the car from

vandalism or theft" was reasonable under the community caretaking function); *Miranda v. City of Cornelius*, 429 F.3d 858, 864-65 (9th Cir. 2005) (whether impoundment warranted under community caretaking doctrine depends on vehicle location and duty to prevent hazard creation or being target for vandalism or theft).

In *Hallstrom*, the plaintiff argued the police violated her rights by arranging for her car to be towed from the parking lot where she pulled off the road. *Hallstrom*, 991 F.2d at 1477, n. 4. In rejecting that argument, the court concluded that the community caretaking exception applied, and that it was not unreasonable for police officers to protect vehicles from vandalism or theft by having them towed. *Hallstrom*, 991 F.2d at 1477 fn. 4 (citing *United States v. Johnson*, 734 F.2d 503, 505 (10th Cir. 1984); *United States v. Griffin*, 729 F.2d 475, 480 (7th Cir. 1984), *cert. denied* 469 U.S. 830 (1984)); see also *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1025 (9th Cir. 2009) (community caretaking includes impounding vehicle to protect from vandalism or theft).

Plaintiff complains that his car "was not parked in violation of any posted parking restrictions, obstructing traffic, blocking any driveways or roadways, posing any other public safety threat, or involved in any crimes." SAC ¶ 19. But Plaintiff's allegations concede that when towed, his vehicle had been parked in the same spot for at least ten days, i.e., more than three times as long as allowed under section 80.73.2. SAC ¶¶ 19, 21. Simply put, the City was well within its rights to impound Plaintiff's vehicle, thus making the "seizure" reasonable. *See Waters v. Hollywood Tow Serv.*, 2010 U.S. Dist. LEXIS 93091, at *43 (C.D. Cal., Jul. 27, 2010) ("Parking enforcement falls squarely within the scope of the community caretaking function.").

Contrary to Plaintiff's conclusory allegation (SAC ¶ 61), he also cannot plausibly allege a deprivation of his Fourteenth Amendment due process rights based on the tow of his car. Procedural due process does not require a hearing before impoundments. *See Miranda v. City of Cornelius*, 429 F.3d 858, 867 (9th Cir. 2005). Moreover, the 72-Hour Law has been held to conform to procedural due process requirements. *See, e.g., Sackman v. City of Los Angeles*, 677 Fed. Appx. 365, 365 (9th Cir. 2017) (affirming

1  dismissal of procedural due process claim based on purported lack of pre-towing notice

2  under 72-Hour Law).  Thus, even if Plaintiff established a policy of towing vehicles for

3  violating the 72-Hour Law without warrants and without a prior hearing, that does not

4  establish a violation of procedural due process sufficient to support *Monell* liability.

5  In sum, Plaintiff has not, and cannot, plausibly allege a deprivation of

6  constitutional rights based on the impound of his car for violating the 72-Hour Law.

7  **2.    Plaintiff's Second Claim Fails Because Plaintiff Cannot Establish**

8  ***Monell* Liability Based On The Fourteenth Amendment**

9  Plaintiff's second claim should be dismissed because he fails to adequately allege

10  the existence of a widespread policy, custom, or practice, much less one that amounts to

11  deliberate indifference to Plaintiff's Fourteenth Amendment due process rights and that

12  was also the moving force behind an alleged violation of those constitutional rights.

13  *a.    Lack of Facts Establishing A Policy, Practice, or Custom*

14  One isolated instance in which Plaintiff alleges he did not get a hearing before his

15  car was sold is not sufficient to demonstrate a policy, practice, or custom, nor are

16  conclusory allegations that lack factual support. *See Van Dusen v. City of Oakland*, 2015

17  U.S. Dist. LEXIS 51777, at *23-24 (N.D. Cal., Apr. 20, 2015) (granting motion to

18  dismiss and holding that formulaic allegations were insufficient to state a *Monell* claim).

19  Courts routinely dismiss 42 U.S.C. § 1983 claims against cities when plaintiffs assert

20  only conclusory allegations, without sufficient factual support, of a plausible policy,

21  practice, or custom.  *See e.g., Bauer v. City of Pleasanton*, 2020 U.S. Dist. LEXIS

22  52748, at *5 (N.D. Cal., Mar. 26, 2020) (dismissing *Monell* claim unsupported by

23  sufficient facts to establish a policy, practice or custom); *Martinez v. County of Los

24  Angeles*, 2018 U.S. Dist. LEXIS 21875, at *12 (C.D. Cal., Feb. 1, 2018) (dismissing

25  claim based on conclusory allegations that "merely parrot[ed] the standard for alleging a

26  Monell claim").

27  Here, even if Plaintiff's allegation that he did not receive a hearing on the citation

28  and/or impound after requesting one were true, the City cannot be held liable under 42

16

1   U.S.C. § 1983 unless the City has a policy, practice or custom of denying such hearings.

2   *See Scofield v. Hillsborough*, 862 F.2d 759, 765 (9th Cir. 1988) (city could not be liable

3   under 42 U.S.C. § 1983 even if plaintiff was denied a post-tow hearing, unless that was

4   consistent with a city policy); *see also Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079,

5   1095 (E.D. Cal. 2012) (dismissing *Monell* claim for failure to plausibly allege a practice

6   or custom, and noting "[a] single constitutional deprivation ordinarily is insufficient to

7   establish a longstanding practice or custom").  At most, Plaintiff relies on only the single

8   instance in which his car was sold at a lien sale after Plaintiff had allegedly attempted to

9   assert his administrative hearing rights as to a parking citation and tow.  *See* SAC ¶ 82.

10  Beyond that, Plaintiff fails to plead facts supporting his conclusory allegation that the

11  City has a policy, practice, or custom of selling cars during the pendency of a challenge

12  to a parking citation or tow.  SAC ¶ 76.  Indeed, Plaintiff offers no facts plausibly

13  suggesting that there have been *any* other instances where a car was sold at a lien sale

14  during the pendency of an administrative challenge to an underlying citation or tow.[8]

15      Plaintiff offers another "policy, practice, or custom" to support his *Monell* claim

16  for violation of his Fourteenth Amendment rights, but it fares no better.  Without

17  offering facts to support the conjecture, Plaintiff alleges in conclusory fashion, and "[o]n

18  information and belief, [that] the City maintains a policy, practice, and custom of not

19  communicating or coordinating between its various agents and administrative bodies –

20  including the Parking Violations Bureau, DOT Central, and the City's OPG overseeing

21  the lien sale – when a vehicle owner challenges a citation which was the basis for a tow."

22  *See* SAC ¶ 54; *see also* SAC ¶ 76.  Such speculative and conclusory allegations, without

23  specific facts to support them, are insufficient to state a plausible *Monell* claim that

24  raises Plaintiff's right to relief above a speculative level.  *See Waters*, 2010 U.S. Dist.

25  LEXIS 93091, at *38 (dismissing *Monell* claim where "Plaintiff's allegations that the

26  City had a municipal policy or custom of violating procedures prescribed by the Vehicle

27

28  ---
    [8] The absence of such facts is particularly telling since Plaintiff claims that "many"
    Angelenos' cars have been towed, and later sold, for a violation of the 72-Hour Law.
    SAC ¶ 34.

Code for contesting parking citations are speculative and devoid of factual support.").

        b.    *No Identified Policy, Practice or Custom Was The "Moving Force" Behind A Constitutional Violation*

It is insufficient to merely allege a policy, practice, or custom; rather, a plaintiff must allege facts plausibly establishing that the policy, practice, or custom was the "moving force" behind a constitutional violation. *See Dougherty*, 654 F.3d 892 at 900-901 (affirming court's dismissal of *Monell* claims where complaint lacked facts establishing that a city custom or practice was the "moving force" behind a constitutional violation). This requires a plaintiff to show "a direct causal link between the municipal action and the deprivation of federal rights." *Bd. Of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997); *see also Inman v. Anderson*, 294 F. Supp. 3d 907, 920 (N.D. Cal. 2018) ("A policy or custom is considered a 'moving force' behind a constitutional violation if both causation-in-fact and proximate causation can be established.").

Even if Plaintiff had adequately alleged the existence of a policy, practice, or custom of not informing the OPGs – the lienholders who conduct the lien sales – of the existence of a challenge to a parking citation that ultimately led to an impound, Plaintiff cannot show that such an alleged lack of communication actually and proximately caused a violation of his Fourteenth Amendment due process rights. In no way does the alleged lack of communication between the City and an OPG regarding the existence of a challenge to a citation and impound prevent a registered vehicle owner like Plaintiff from asserting his hearing rights to oppose a lien sale by following the steps laid out in Civil Code section 3072 (which are also spelled out in the notice of lien sale that Plaintiff concedes he received). All Plaintiff was required to do in order to exercise his right to be heard in opposition to the lien sale of his car was to complete the Declaration of Opposition portion of the Notice of Pending Lien Sale and provide it to the Department of Motor Vehicles within 10 days of the date the notice was mailed. Cal. Civ. Code § 3072; *see also Whitsitt v. Zedlitz*, 2013 U.S. Dist. LEXIS 202482, at *7-8 (Jul. 19, 2013) (discussing process outlined in § 3072 to dispute lien sale). Despite

acknowledging that separate procedures exist for challenging (1) a parking citation, (2) a vehicle impound, and (3) a vehicle lien sale, Plaintiff tacitly concedes that he did not take steps necessary to contest the lien sale and avail himself of the opportunity to be heard prior to the sale of his car.  The SAC is noticeably devoid of any facts plausibly suggesting that the City has a policy, practice or custom of authorizing OPGs to sell vehicles after the registered owners of those vehicles have properly and timely followed the procedure set forth in California Civil Code section 3072 to assert their hearing rights to oppose a lien sale.

### B.   Plaintiff Has Not Adequately Alleged A Failure to Train or Supervise

To the extent Plaintiff attempts to base either of his first two claims on a failure to train or supervise theory, he falls short.  A failure to train *Monell* claim is actionable "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants" such that it can "be properly thought of as a city policy or custom under § 1983." *Flores v. County of Los Angeles*, 758 F.3d 1154, 1157 n.8 (9th Cir. 2014) (citation omitted).  The SAC contains only vague and conclusory allegations regarding an alleged failure to train or supervise, such as "Defendants' failure to train, supervise, and/or promulgate appropriate policies, procedures, and practices to prevent the enforcement of the 72-hour rule through warrantless tows." SAC ¶ 68.  There are no specific factual allegations regarding what the City's relevant training policies or programs consist of, much less details explaining how the training or supervision was inadequate on a system-wide level.  Plaintiff's conclusory allegations are insufficient to support a *Monell* claim based on failure to train or supervise.  *See Manda v. Albin*, 2019 U.S. Dist. LEXIS 204473, at *25 (N.D. Cal. Nov. 25, 2019) (granting motion to dismiss because conclusory allegations regarding the city needing "more or different training, supervision, investigation or discipline" were insufficient).  The allegations do not raise Plaintiff's right to relief above a speculative level, particularly in light of the high bar applicable to failure to train claims.  *See Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("A municipality's culpability for a

1   deprivation of rights is at its most tenuous where a claim turns on a failure to train").

2         Even if the SAC contained sufficient facts to suggest a failure to train or supervise

3   in the one instance involving Plaintiff (*see* SAC ¶ 64), that single incident does not

4   establish a pattern sufficient to state a *Monell* claim for a failure to train or supervise.

5   *See Flores v. County of Los Angeles*, 758 F.3d. 1154, 1159-60 (9th Cir. 2014) (isolated

6   incidents of wrongdoing did not establish pattern of training deficiencies to put county

7   on notice of deficiencies sufficient to establish deliberate indifference element of failure

8   to train claim); *Albin*, 2019 U.S. Dist. LEXIS 204473, at *24-25 (single act was

9   insufficient to establish supervisory inaction); *Vasquez v. City of Santa Paula*, 2015 U.S.

10  Dist. LEXIS 186844, at *11 (C.D. Cal. Mar. 11, 2015) ("evidence of a failure to

11  supervise during a single incident does not establish a policy or longstanding practice or

12  custom required for *Monell* liability.").

13        Moreover, Plaintiff's conclusory allegations are insufficient to establish a nexus

14  between the vaguely-alleged failure to train and supervise, and any resulting alleged

15  constitutional violation.  *See Dougherty*, 654 F.3d at 900-901 (affirming dismissal of

16  *Monell* claim where facts did not establish any custom or practice was the "moving

17  force" behind a constitutional violation).  Plaintiff's failure to train theory fails.

18        **C.    Plaintiff Fails To State A Claim For Violation Of The ADA**

19        To state a claim under Title II of the ADA, Plaintiff must allege that: (1) he is an

20  individual with a disability; (2) he is otherwise qualified to participate in or receive the

21  benefit of the City's services, programs, or activities; (3) he was either excluded from

22  participation in or denied such benefit, or was discriminated against by the City; and (4)

23  such exclusion, denial of benefits, or discrimination was by reason of [his] disability. 42

24  U.S.C. § 12132; *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1061 (9th Cir. 2007).

25        Plaintiff has not shown that he had a "disability" entitling him to the ADA's

26  protection.  A "disability" under the ADA is "(A) a physical or mental impairment that

27  substantially limits one or more major life activities of [an] individual; (B) a record of

28  such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C.

§ 12102(1).  Neither Plaintiff's alleged short recovery from surgery causing him to be "largely bedbound in the days following his discharge from hospital," nor the three-month medical prohibition on driving constitute a "disability." SAC ¶ 20.  Short-term, temporary conditions typically do not qualify as a "disability."  *See e.g., Sanders v. Arneson Prods., Inc.*, 91 F.3d 1351, 1354 (9th Cir. 1996) (four-month psychological impairment did not constitute a disability under the ADA); *Apostol v. Castro Valley Unified Sch. Dist*, 2011 U.S. Dist. LEXIS 124509, at *10-11 (N.D. Cal. Oct. 27, 2011) (plantar faciitis that partially restricted ability to walk for about three months was not a disability within the ADA).  In addition, although the Ninth Circuit has not squarely addressed the issue, case law from other circuits indicates that a medicinal side effect can be a "disability" only if the medicine is necessary in the judgment of the medical profession, and there is no alternative. *See e.g., Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 187 (3d Cir. 2010) ("if one can alter or remove the 'impairment' through an equally efficacious course of treatment, it should not be considered 'disabling'.").  The SAC does not allege that there was no equally efficacious alternative to Plaintiff's medicine that would not have impacted driving, such that taking the medicine for three months could be considered "disabling."  Moreover, several courts have held that driving is not a major life activity.  *See Mandujano v. Geithner*, 2011 U.S. Dist. LEXIS 68582, at *15 (N.D. Cal. Jun. 28, 2011) ("a number of courts have held that driving by itself does not constitute a major life activity under the ADA.").  Plaintiff's short-term refrain from driving simply was not a "disability" that substantially limited a major life activity.

Even if Plaintiff had a "disability" within the meaning of the ADA, Plaintiff fails to articulate a cognizable theory of a service, program, or activity from which he was excluded or of which he was denied the benefit.  To the extent Plaintiff is trying to assert he was denied a reasonable accommodation with respect to the City's "administrative procedures" (SAC ¶ 95), such theory fails.  Although Plaintiff makes vague reference to the City's alleged failure to "provide additional time for disabled persons to navigate the administrative hearing process" (SAC ¶¶ 5, 27), nowhere does he allege that he notified

1    the City that, due to a disability, he required more time to challenge his citation or tow.

2    Indeed, Plaintiff does not allege he was unable to comply with the administrative

3    challenge process due to a disability, but, on the contrary, he contends that he effectively

4    contested the citation and tow.  *See* SAC ¶¶ 28, 30.  The alleged facts, thus, do not

5    plausibly establish that Plaintiff notified the City that he needed an accommodation to

6    the challenge process, much less that he was denied such accommodation.

7          Even if Plaintiff had adequately alleged the other elements of his claim, Plaintiff

8    fails to plausibly allege that any denial was "by reason of" a disability.  Plaintiff's

9    conclusory allegations[9] do not suffice to plead the requisite nexus between his alleged

10    disability and wrongful conduct. *See O'Guinn*, [502 F.3d at 1060](#) (plaintiff must allege

11    "exclusion, denial of benefits, or discrimination was by reason of [his] disability").

12          For all these reasons, Plaintiff's ADA claim should be dismissed.[10]

13        **D.**    **Plaintiff Fails To State A Claim Under The Unruh Civil Rights Act**

14          The Unruh Act provides for damages "made by a 'business establishment' in the

15    course of furnishing goods, services or facilities to its clients, patrons or customers."

16    *Stamps v. Superior Court*, [136 Cal. App. 4th 1441, 1449](#) (2006).  A municipal entity is

17    not a business establishment for purposes of the act unless it engages in behavior

18    involving sufficient "businesslike attributes." *See Qualified Patients Assn. v. City of*

19    *Anaheim*, [187 Cal.App.4th 734, 764–765](#) (2010) (because city enacting legislation is not

20    functioning as a "business establishment," we conclude the act does not embrace

21    plaintiffs' claims against the city for discrimination based on a disability or medical

22    condition calling for the use of medical marijuana); *Taormina v. California Dept. of*

23    *Corrections*, [946 F. Supp. 829, 833](#) (S.D. Cal. 1996); *Gaston v. Colio* [883 F. Supp. 508](#)

24    (S.D. Cal. 1995); *see also Curran v. Mount Diablo Council of the Boy Scouts*, [17 Cal.4th](#)

---

25
26    [9] *See, e.g.,* SAC ¶ 96 ("Defendants' failure to accommodate Mr. Morrissey and the resulting denial of benefits and services was due to his disability and/or medical condition.").

27    [10] In addition, Plaintiff fails to allege the deliberate indifference by the City necessary to recover damages under the ADA against a governmental entity.  *See Duvall v. Cty. of*

28    *Kitsap*, [260 F.3d 1124, 1138](#) (9th Cir. 2001) (requiring that plaintiff show deliberate indifference by public entity to recover monetary damages under Title II of the ADA).

670, 676–677 (1998) (organization is not a business establishment for purposes of the
Unruh Act if the organization is not involved in the sale of access to the basic activities
or services of the organization).  An organization has sufficient businesslike attributes to
qualify as a business establishment when it "appears to have been operating in a capacity
that is the functional equivalent of a commercial enterprise." *Warfield v. Peninsula Golf
& Country Club*, 10 Cal.4th 594, 622 (1995). The City is a municipal entity, not a
business establishment, and nothing in its parking regulations enforcement transforms its
nature such that it is liable under the Unruh Act.

This conclusion was confirmed in *Carter v. City of Los Angeles*, 224 Cal.App.4th
808, 825 (2014), which involved allegations that the City violated Title II of the ADA,
the Unruh Act and the CDPA.  While *dicta*, the Court of Appeal noted statutory damages
were unlikely under the CDPA and Unruh Act. *Carter, supra*, 224 Cal. App. 4th at 825:

> The settlement and trial judges below deemed appellants' damages claims to
> be "incidental" because they were legally questionable.  In other words,
> statutory damages were 'a long shot' and the right to them "highly
> questionable" because no California court would likely consider a municipal
> entity to be liable under the Unruh Civil Rights Act or the Disabled Persons
> Act; the released damages claims were of minimal value and therefore
> incidental.  We happen to agree that statutory damages are unlikely here.  *Id.*

The conclusion is unambiguous and confirms that damages under the Unruh Act
are not recoverable against the City, a public entity.  *Carter* 224 Cal. App. 4th at 825.
The clear position of both lower and appellate courts was that damages under the Unruh
Act are not recoverable against the City, as a public entity.  The City is no more a
"business establishment" here than the Legislature was one in *Qualified Patients Assn.*,
above, or the prison was one in *Taormina*.  These cases are unambiguous and confirm
that damages under the Unruh Act are not recoverable against the City, a public entity.

### E.  Plaintiff Fails To State A Claim Under The CDPA

Plaintiff's CPDPA claim fails for the same reasons as Plaintiff's ADA claim for

1   relief.  In addition, the CDPA does not provide for monetary liability for a City.  Civ.

2   Code, § 54.3, subd. (a) provides for monetary liability only for "[a]ny person or persons,

3   firm, or corporation" who violates its provisions.  If the Legislature intended to include

4   cities as potentially liable under the CDPA, it could have easily, and indeed would have,

5   included the word "city" in section 54.3.  Because it did not, the Court should conclude

6   that the Legislature did not intend for cities and counties to be liable for money damages

7   under the CDPA. *See Carter*, 224 Cal.App.4th at 825 (opining that "no California court"

8   would likely hold a city liable for damages under the CDPA).

9   **F.    Plaintiff Cannot State A Claim Against The City Under California**

10  **Civil Code Section 3072**

11  Assuming *arguendo* that Plaintiff adequately alleged the Lien Sale Notice did not

12  comply with Civil Code section 3072, that provision imposes obligations to provide a

13  notice of lien sale only on a lienholder, *i.e.,* Viertel's.  However, no obligations with

14  respect to that notice fall on the public entity directing the car to be towed in good faith

15  compliance with the law.  Specifically, "Section 3072 requires the lienholder (not the

16  county or law enforcement agency directing that the car be towed) to send by certified

17  mail 'a completed Notice of Pending Lien Sale form…", and "[t]hat section imposes no

18  notice-giving duty on the county or the law enforcement entity."  *See Hawkins v. San*

19  *Mateo County Law Library*, 2007 U.S. Dist. LEXIS 47559, at *15 (N.D. Cal. Jun. 21,

20  2007) (granting county defendants' motion to dismiss because "they had no legal

21  obligation to notify Hawkins of the pending lien sale of his vehicle by the towing

22  company."  *See id.*  Likewise, Plaintiff fails to state a claim against the City for violation

23  of Section 3072 because this section does not impose any obligation on the City.

24  **G.    Plaintiff Fails To State A Claim Under Government Code Section 815.6**

25  To state a claim under Government Code section 815.6, a plaintiff must allege: (1)

26  an enactment imposes a mandatory duty on a public entity; (2) the duty was intended to

27  prevent the kind of harm plaintiff alleges; and (3) a breach of the duty was a proximate

28  cause of plaintiff's harm. *Guzman v. County of Monterey*, 46 Cal. 4th 887, 898 (2009).

1  Plaintiff relies on two allegedly mandatory duties – one imposed on Viertel's (not
2  the City) by Civil Code section 3072 to include specified information in a lien notice,
3  and one imposed by Vehicle Code section 22852(b) to send an impound notice to an
4  impounded car's owner within a specified time.  *See* SAC ¶¶ 132, 135.  Assuming
5  *arguendo* that Plaintiff identified a statute imposing a mandatory duty on the City, and
6  that Plaintiff's conclusory allegation were sufficient to allege that the sale of his vehicle
7  "without due process" was the type of harm the statute intended to prevent (SAC ¶ 137),
8  Plaintiff nonetheless fails to state a claim for breach of a mandatory duty because he has
9  not, and cannot, allege facts establishing the requisite causal link between the alleged
10  breach and the alleged harm.  Instead, the SAC includes only a conclusory allegation that
11  "[t]he City's and its agent's negligence and failure to perform its mandatory duties under
12  California Civil Code § 3072 and California Vehicle Code § 22852 proximately caused
13  (1) the wrongful sale of Mr. Morrissey's vehicle; and (2) the deprivation of due process
14  suffered by Mr. Morrissey."  SAC ¶ 138.  Moreover, the facts that *are* alleged indicate
15  the opposite is true – that despite the allegedly statutorily-deficient notices, Plaintiff
16  received written notices of both the impound and pending lien sale, and there is no
17  allegation that Plaintiff's car was sold either without his knowledge or before he had
18  sufficient time to contest the sale; instead, Plaintiff chose not to dispute the lien sale.  *See*
19  SAC ¶¶ 24, 25, 27.  Plaintiff's eighth claim should be dismissed.

## VI.  CONCLUSION

For the foregoing reasons, the City respectfully requests that this action be
dismissed or stayed under *Colorado River* or, alternatively, that the claims against the
City be dismissed pursuant to Rule 12(b)(6).

Dated:  July 13, 2020

**OFFICE OF THE LOS ANGELES CITY ATTORNEY**

/s/ Jessica Mariani
JESSICA A. MARIANI
Deputy City Attorney
Attorneys for Defendant City of Los Angeles